UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO.: 1:14-CR-14-TLS |
| | ) | |
| FLOYD D. THOMAS, | ) | |
| DERRICK L. THOMAS, | ) | |
| DWAINE BARTLETT, | ) | |
| RICHARD A. COUNCIL, and | ) | |
| RICHARD E. MURRAY | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Evidentiary Hearing on the Issue of Selective Prosecution [ECF No. 200] filed on December 8, 2016. In an Order [ECF No. 181] dated August 22, 2016, the Court granted in part and withheld ruling in part the Defendant's Motion to Compel Discovery [ECF No. 152], filed on March 21, 2016, seeking documents pertaining to ATF reverse sting operations. The parties then filed a Notice of Agreed Discovery [ECF No. 185] on September 6, 2016, stipulating to agreed documents regarding ATF procedure. Now after receiving discovery, the Defendants request an evidentiary hearing "in order to produce testimony to support their claim that the government, in particular . . . []ATF[], violated the equal protection clause under the Fifth Amendment by selectively prosecuting African-Americans in reverse sting operations in the Northern District of Indiana." (Mot. for Evidentiary Hr'g 1, ECF No. 200.)

**ANALYSIS**

**A.    Proper Standard**

As an initial matter, the parties dispute the proper standard that applies in assessing the Motion for an Evidentiary Hearing. The Supreme Court has "defined the showing necessary for a

defendant to obtain discovery on a selective prosecution claim." *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). The same analysis for selective prosecution also governs selective enforcement claims. *Barlow*, 310 F.3d at 1010 ("a defendant seeking discovery on a selective enforcement claim must meet the same 'ordinary equal protection standards' that *Armstrong* outlines for selective prosecution claims."). To prevail on an *Armstrong* motion, a defendant needs "to demonstrate that the agents' actions have a discriminatory effect and that the agents had a discriminatory purpose." *Id.* And to establish the discriminatory effect prong, a "claimant must demonstrate that a law or regulation was enforced against him, but not against similarly situated individuals of another race." *Id.* (citing *Armstrong*, 517 U.S. at 465).

While the parties agree on the basics of an *Armstrong* inquiry, they deviate in whether that standard precisely applies to an evidentiary hearing here. The Government states that "a defendant has to make a similar evidentiary showing just to get a hearing on selective prosecution" (Gov.'s Resp. 5, ECF No. 204, citing *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996)), a case decided shortly before the Supreme Court's ruling in *Armstrong*. The Defendants respond that the Government misunderstood *Monsoor*, where the circuit held that "[t]o obtain a hearing on a claim of vindictive or selective prosecution, a defendant must 'offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment.'" *Monsoor*, 77 F.3d at 1034.

Although the parties disagree on how exactly *Monsoor* applies, it is instructive here. A case involving a prosecution for "over 100 pounds of catfish that had been caught in violation of a Wisconsin natural resources regulation," Monsoor sought an appeal of "the district court's denial of his motion to dismiss for vindictive and selective prosecution, arguing that at the very

2

least he should have received an evidentiary hearing on the issue." *Id.* at 1031. In the immediate next sentence after the one the Defendants cite to above as the standard for obtaining an evidentiary hearing, the Seventh Circuit then stated that:

> *Specifically*, selective prosecution requires a showing that the defendant "(1) . . . [was] singled out for prosecution while other violators *similarly situated* were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights." *United States v. Cyprian*, 23 F.3d at 1195 (7th Cir. 1994).

*Monsoor*, 77 F.3d at 1034 (emphasis added). Thus, the Seventh Circuit envisioned that "sufficient evidence to raise a reasonable doubt" would "[s]pecifically" require a showing that claimant was "similarly situated" to non-prosecuted individuals on a classification such as race. The circuit disposed of Monsoor's selective prosecution claim and request for an evidentiary hearing on this basis as well. *Id.* In the first sentence of the relevant paragraph, the circuit states that "Monsoor's selectiveness claim was properly rejected because he failed to establish that he was singled out for prosecution while other similarly situated individuals were not prosecuted." *Id.* at 1034. Then in the last sentence of the paragraph, the circuit stated that "[h]aving failed to present any evidence that his prosecution was selective, Monsoor was not entitled to an evidentiary hearing on this claim." *Id.*

Therefore, the Government was correct to assert that the *Armstrong* standard applies here. The Defendants are not entitled to an evidentiary hearing unless they can demonstrate that the ATF agents' actions had a discriminatory effect and that the agents had a discriminatory purpose when they executed the reverse sting.

**B.     Discriminatory Effect Inquiry**

The Defendants have offered statistics at various points through the proceedings. First the Defendants point to the affidavit of Yihao Deng, Ph.D. Detailed in Deng's two-page Affidavit is

3

a calculation of the probability of selecting a certain racial composition of defendants under the assumption that the subjects were randomly selected from the overall population. Deng states that there is a 0.000000000000000000045 probability of randomly selecting 23 Black males and 2 white males in the Northern District of Indiana.[1] (Deng Aff. ¶ 4, ECF No. 153-3.) Second, Deng then assumes that if one of the cases referenced involved only 1 defendant instead of 6 (making comparison 18 black males to 2 white males) the statistical probability increases to 0.00000000000000025, but still "almost 0." (*Id.* ¶ 5.) Deng concludes that "from a statistical analysis perspective, the number of black males prosecuted . . . over represents the black population in the Northern District of Indiana." (*Id.* ¶ 6.) In addition, the Defendants present a list of federal cases entitled "Similarly Situated White Males 2006–2015" in Exhibit B [ECF No. 153-2] of their Memorandum in Support to Compel Discovery [ECF No. 153]. This list details 36 white male defendants that were not targeted in reverse sting operations.

Using statistics may be sufficient to establish *Armstrong*'s discriminatory effect prong. *Barlow*, 310 F.3d at 1011. "But such statistics must be relevant and reliable." *Id.* The statistical presentation thus must provide detail beyond a general comparison of the population as a whole. *Barlow*, 310 F.3d at 1012 ("To meet his burden under *Armstrong*, [the claimant] needed to present evidence that the DEA agents observed whites engaging in the same behavior as [the claimant]—i.e., looking nervously over their shoulders—but chose not to approach them"). Mere presentation of a list of cases with defendants having the same race and charges "fails to come

---

[1] In their briefing, it appears the Defendants misstate this statistic by saying that "the government has only prosecuted two (2) out of twenty-five (25) white people in all of its reverse sting operations in the Northern District of Indiana." (Def. Reply to Gov.'s Resp. to Mot. for Evid. Hearing 2, ECF No. 205.) The statement misrepresents Deng's affidavit describing the statistical probability of selecting 23 black males and 2 white males. Nonetheless, even if assumed as true, the comparison the Defendants proffer in their briefing still does not provide meaningful detail about similarly situated defendants in reverse sting operations. *See Barlow*, 310 F.3d at 1011.

close to making a *prima facie* showing of selective prosecution." *United States v. Westmoreland*, 122 F.3d 431, 434 (7th Cir. 1997).

The Defendants have not proffered adequate statistics to meet the discriminatory effect prong of their *Armstrong* motion. The statistical probabilities in Deng's affidavit are based on the general population of the Northern District of Indiana and do not factor in data to establish similarly situated persons, such as prior criminal history. *Barlow*, 310 F.3d at 1012. Furthermore, the list of 36 white defendants does not supply any meaningful information for how the individuals in the cases listed were similarly situated to black defendants charged in reverse sting operations. The only reason given for these cases being similarly situated is that these white males were convicted of drug crimes, weapons offenses, and violent crimes, including robberies, but none were targeted in reverse sting operations. Buttressing this point, the Defendants have received discovery regarding ATF's criteria for reverse sting operations in targeting only those individuals with a significant criminal history and predisposition for drug robberies. But the Defendants' list of cases does not factor in this procedure. Some of the cases the Defendants list do not involve a proactive investigation with an informant or undercover agent, which are necessary conditions for a reverse sting operation. Not all of the cases were ATF investigations.

The Defendants rely heavily on *Chavez v. Illinois State Police*, 251 F.3d 612, 638 (7th Cir. 2001), to make the point that they do not need to name white individuals who were not prosecuted so long as they present statistical information establishing a discriminatory effect. This is true, but the Defendants' reliance still misses the threshold question of whether their proffered statistics are sufficiently rich in information that would demonstrate that the rate of enforcement actions against similarly situated white individuals like Defendant Thomas in the Northern District of Indiana is materially less than the rate of enforcement actions against

African-Americans similarly situated to him. The statistics must address the question of whether one group is being treated differently from another group that is similarly situated. *Chavez*, 251 F.3d at 638.

Lastly, the Defendants point to alleged statements made by ATF agents to demonstrate that they have produce "some evidence" tending to show the existence of the discriminatory effect element. *See Armstrong*, 517 U.S. at 465. "[R]acially insensitive remarks . . . do not by themselves violate the Constitution." *Chavez*, 251 F.3d at 646. "This does not mean, however, that the use of racially derogatory language is without legal significance. Such language is strong evidence of racial animus, an essential element of any equal protection claim." *Id.* (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 n.3 (7th Cir. 2000)). While these alleged remarks could have probative value for animus in an equal protection claim, these statements are not sufficient to establish the discriminatory effect prong of the *Armstrong* inquiry. Because the statistics and evidence provided by the Defendants are insufficiently probative, the Court denies their Motion.

## CONCLUSION

For the forgoing reasons, the Court DENIES the Defendant's Motion for an Evidentiary Hearing on the Issue of Selective Prosecution. The Court will set the Telephonic Final Pre-trial Conference and Jury Trial dates by separate order.

SO ORDERED on February 14, 2017.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT